**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HARRIET GREEN,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　**Case No. 6:08-cv-2034-Orl-28DAB**

**STAPLES, INC.,**

        **Defendant.**

_____

## ORDER

Plaintiff Harriet Green brings the instant action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, alleging that Defendant, Staples, Inc. ("Staples"), denied her employment based on her age. Plaintiff also contends that Staples retaliated against her in violation of the ADEA by not hiring her after she complained about age discrimination.

The case is now before the Court on the Motion for Summary Judgment (Doc. 23) filed by Staples and Plaintiff's Response (Doc. 25) thereto. Having considered the parties' submissions and applicable law, the Court concludes that Staples's motion must be granted as to both of Plaintiff's claims.

### I. Background

In early 2007, Staples placed an advertisement in the newspaper for an account manager/inside sales representative position at its telesales center in Maitland, Florida. (Leider Decl. ¶ 6). On March 5, 2007, Plaintiff emailed her resumé to Staples's Human

Resources Coordinator, Christina Medina, in order to apply for the advertised position. (Pl. Dep. at 34, 127-29; Ex. 2 to Doc. 24). Plaintiff was forty-seven years old at the time.

In its hiring process, Staples schedules interviews after applications are reviewed for satisfaction of the requisite qualifications. (Leider Decl. ¶ 8). When Plaintiff did not hear anything from Staples after a few weeks, she called the telephone number in the advertisement and inquired about her resumé. (Pl. Dep. at 130). According to Plaintiff, Medina told her that her resumé looked "pretty good" and that Medina was waiting for Brian Valley, an operations manager, to decide about interviews. (Id. at 63, 132, 134). Plaintiff told Medina she would wait another week and then would check back again. (Id. at 132).

On March 28, 2007, Plaintiff called Staples again and spoke to Salita Latson, a Human Resources Assistant. (Id. at 133; Leider Decl. ¶ 11). Plaintiff inquired about the status of her resumé, and Latson asked Plaintiff to send her resumé in again; Plaintiff emailed her resumé to Latson that same day. (Pl. Dep. at 133-34; email with resumé attached, Ex. 2 to Doc. 24).

On April 2, 2007, Plaintiff went to Staples's office in Maitland, Florida and filled out an application for the job.[1] (Pl. Dep. at 138; Pl.'s job application, Ex. 7 to Pl. Dep.). While Plaintiff was on the site, she spoke to a receptionist and also met Latson and Medina, who again told Plaintiff that they would be in touch with her after they heard from Brian Valley. (Pl. Dep. at 138). Latson and Medina both told Debbie Leider, the Human Resources

---

[1] In her deposition, Plaintiff denies being told by Latson or Medina to come in to fill out an application. (Pl. Dep. at 133). In her affidavit, Plaintiff states that she was told on the telephone by someone that she needed to pick up an application. (Pl. Aff. at 1).

Manager at the Maitland telecenter, that Plaintiff demanded to be seen for an interview when she showed up at the Maitland office on April 2, (Leider Decl. ¶ 12), but in her deposition Plaintiff denied this, stating that she went there only to fill out an application, (Pl. Dep. at 148). Latson also told Leider that Plaintiff was rude to her when she telephoned and that when she came into the telesales center she told Latson—without knowing who Latson was—that Medina and Latson were "liars" and had been avoiding her phone calls. (Leider Decl. ¶ 14).

Plaintiff denies calling anyone a liar. (Pl. Aff. at 1). However, Plaintiff felt that Latson "seemed as though she was foreclosing the idea that she would give [Plaintiff] a fair chance to demonstrate [her] ability to do the job." (Id. at 2). Specifically, Plaintiff asserts that Latson expressed concern about whether Plaintiff "would be able to give [Staples] the longevity the company was looking for." (Id.). Plaintiff construed this remark as "likely a reference to [her] age," which she regarded as "patently unfair and undoubtedly illegal." (Id.).

Having become "convinced that [she] was discriminated against because of [her] age," shortly thereafter Plaintiff contacted Ellen Kruse, Staples's Director of Human Resources for the Northeast and Mid-Atlantic regions, believing that this was the corporate office. (Pl. Aff. at 2; Kruse Decl. ¶¶ 2-3). Plaintiff told Kruse that she had not been granted an interview and that she believed she was being discriminated against because of her age. (Kruse Decl. ¶ 3). The Maitland, Florida office at which Plaintiff sought employment was not in Kruse's region; Kruse, whose office is in Massachusetts, explained this to Plaintiff and told her that as a courtesy she would contact Janis Warner, the Human Resources Director for the Southern region, about the matter. (Id. ¶ 5). Kruse contacted Warner shortly thereafter

and told her that Plaintiff had applied for a position in Maitland but had not been granted an interview. (Id. ¶ 6). Warner then telephoned Leider and told her that she wanted Leider to personally interview Plaintiff. (Leider Decl. ¶ 20). Leider accordingly called Plaintiff and scheduled an interview for Friday, April 13, 2007. (Id. ¶ 21).

Meanwhile, in a letter dated April 6, 2007, Staples thanked Plaintiff for her interest in the account manager position and informed her that "[a]fter carefully reviewing [her] qualifications against [its] positions, . . . [it was] unable to offer [her] this position." (Ex. 8 to Pl. Dep.). Leider states in her declaration that this decision was made based on Plaintiff's frequent job switching, lack of outbound sales experience, and rudeness to Medina and Latson when she visited the telecenter on April 2. (Leider Decl. ¶ 19).

It is not clear when Plaintiff received this letter. In her deposition, Plaintiff testified that she received this on April 9 or 10—prior to the April 13 interview—and that after her interview had been scheduled with Leider, she called Leider back and told her about the letter; she was told to disregard it. (Pl. Dep. at 171-72). However, in her affidavit, Plaintiff states, after recounting her interview: "My suspicions concerning the interview were confirmed when I received a letter in the mail from Staples advising me that I was not selected for the position. The letter was dated April 6, 2007. My interview was held on April 13, 2007. Therefore, they made the decision not to hire me exactly one week before they interviewed me."[2] (Pl. Aff.

---

[2]This discrepancy is only one example of disparities in Plaintiff's version of the case. Her deposition differs from her affidavit in several respects, and additionally, the Complaint (Doc. 1) and summary judgment response (Doc. 25) at times also differ from Plaintiff's testimony. Compare, e.g., Doc. 25 at 1 (stating that Medina told Plaintiff to come to the office to fill out an application), with Pl. Dep. at 133 (stating that Medina "never" told her to do so).

-4-

at 4). This suggests that Plaintiff did not receive the letter until after the April 13 interview. Whether Plaintiff received the letter before or after the interview, however, it is clear that the letter is dated before the interview occurred.

Plaintiff was interviewed on April 13 as scheduled, first by Leider and then by Operations Manager Brian Valley and Team Leader Shawn McCurdy. Based on meeting with Plaintiff, Leider did not feel that Plaintiff had the requisite experience in outbound sales or account management, nor were her verbal communications skills good. (Leider Decl. ¶ 24). Valley and McCurdy similarly felt that Plaintiff's communications skills were poor and that she did not demonstrate good sales technique when asked to pretend to sell them a product—a television—during their portion of the interview. (Valley Decl. ¶¶ 6-8 ; McCurdy Decl. ¶¶ 6-8). Leider telephoned Plaintiff on April 18, 2007 and informed her that Staples would not be offering her the account manager/inside sales representative position. (Leider Decl. ¶ 27). Plaintiff filed this lawsuit on December 4, 2008. (Doc. 1).

## II. Discussion

### A. Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves

v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.'  Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

B.  The Merits of Defendant's Motion

1.  Discrimination Based on Age (Count I)

Plaintiff asserts in her first count that she was not hired because of her age.  Plaintiff has not presented any direct evidence of age discrimination, but even without such evidence she can potentially survive summary judgment on this claim using the burden-shifting framework established by the United States Supreme Court for employment discrimination cases.  Under this framework, the plaintiff has the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence.  McDonnell Douglas Corp. v.

<5701>

Green, 411 U.S. 792, 802 (1973). As the Eleventh Circuit has noted, "[d]emonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a prima facie case, a presumption of discrimination arises. See, e.g., Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Once the plaintiff has presented a prima facie case and its attendant presumption, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas, 411 U.S. at 802. The employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). If the employer meets its burden of production, "'the McDonnell Douglas framework—with its presumptions and burdens'—disappear[s], and the sole remaining issue [is] 'discrimination vel non.'" Reeves, 530 U.S. at 142-43 (quoting St. Mary's Honor Ctr., 509 U.S. at 510, and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)). In order to prevail on a claim of disparate treatment, the plaintiff must establish that the employer acted with a discriminatory animus. Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1520 (11th Cir. 1995) (citing Burdine).

In order to establish a prima facie case of discriminatory failure to hire under the ADEA, Plaintiff must show: (1) that she was a member of the protected class of persons forty years of age and older; (2) that she applied for but was not hired for a position; (3) that

a substantially younger person filled the position that she sought;[3] and (4) that she was qualified for the position. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998); see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308 (1996) (setting forth similar elements in ADEA discriminatory termination case).  It is not disputed that Plaintiff has satisfied the first two of these elements, but the parties disagree on the last two prongs of the prima facie case.

With regard to the age of the person hired for the position that Plaintiff did not obtain, neither side has explained how many positions were available when Plaintiff applied in March and April of 2007.  Staples has submitted evidence that it hired five persons older than Plaintiff for the account manager/inside sales representative position in April 2007.  (Leider

---

[3]In its summary judgment papers, Defendant lists the third element of an ADEA prima facie case as, in essence, that the position was given to a person outside the protected class—a person under the age of 40. (See Doc. 24 at 12).  Plaintiff lists the element as requiring that a "younger" person was hired, though Plaintiff also makes reference to "outside the protected class" in discussion of this element. (See Doc. 25 at 5).  However, controlling case law does not require in an ADEA case that the person who received the job be outside the protected class but only "substantially younger" than the plaintiff.  Both the United States Supreme Court and the Eleventh Circuit have squarely so held. Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996) ("Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case. . . . Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."); accord Turlington v. Atlanta Gas Light Co., 135 F.3d at 1432-33 & n.10  (11th Cir. 1998).  Thus, an ADEA plaintiff must show that she is within the protected class, but once that is established, she need only show that someone substantially younger was hired, regardless of whether that person is inside or outside the protected class. Wright v. Southland Corp., 187 F.3d 1287, 1290 n.3 (11th Cir. 1999). By way of example, a forty-year-old plaintiff would presumably be unable to establish a prima facie case by pointing to a thirty-nine-year-old comparator, but a sixty-year-old could state a case by relying on a forty-year-old comparator.

-8-

Decl. ¶ 29; Ex. 7 to Leider Decl.).  Plaintiff responds with a list of approximately two hundred employees who were hired in 2006, 2007, and 2008 in several categories of sales or account management position; the list includes dates of birth for the employees, and Plaintiff has marked seventy-three employees on this list as "younger individuals hired subsequent to Plaintiff's application."  (Ex. 6 to Doc. 25).  Plaintiff contends that this "list is clear and compelling evidence with respect to proving the third element of Plaintiff's claim."  (Doc. 25 at 6).

Although Staples's evidence of hiring five older workers does not necessarily defeat Plaintiff's claim, the Court finds that Plaintiff's list of the birthdates of later-hired Staples workers is far from "clear and compelling" evidence in Plaintiff's favor.[4]  Nevertheless, it is sufficient to show that at least one substantially younger worker was hired during the pertinent time frame, and for the purposes of the prima facie case this is enough to satisfy the third element.

The parties vigorously dispute whether Plaintiff was qualified for the position.  "[T]o demonstrate that he was qualified for the position, a [plaintiff in an employment discrimination case] need only show that he or she satisfied an employer's objective qualifications."  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir. 2005).  The advertisement for the position for which Plaintiff applied listed qualifications of "1 to 3 years sales experience," "[o]utbound calling business to business experience (preferred)," "[p]roven sales and closing experience," "[c]ustomer service oriented," and "PC skill required."  (Ex.

---

[4]This list submitted by Plaintiff indicates that in addition to younger hirees, there were also many persons hired who are substantially older than Plaintiff.

6 to Pl. Dep.). Leider explains in her declaration that at the Maitland telesales center, "associates are responsible for contacting current business customers to help retain and develop their business needs along with acquiring prospective customers." (Leider Decl. ¶ 5). Staples contends that Plaintiff is unable to show that she satisfied Staples's objective qualification requirements, including experience in account management and making outbound sales calls.

On the job application that Plaintiff completed on April 2, 2007 for the position at Staples, Plaintiff listed four prior jobs: substitute teacher at a middle school; clerk who registered decals for an Army reservation; and two customer service sales representative positions. (Ex. 7 to Pl. Dep.). With regard to one of the customer service positions, Plaintiff indicated that she activated cellular telephone service and sold internet service and satellite television and radio service. (Id.). With regard to the other, she indicated that her job duties included "inbound calls" working for Sprint. (Id.). On her resumé,[5] Plaintiff listed three customer service/sales representative positions—one at Sprint, one at Cellular Connection, and one at Wireless Retail. (Ex. 2 to Doc. 25). Those positions are not described on the resumé, but the resumé lists several qualifications, including customer service, "processing local and long distance service," "explaining contracts," "processing and activating phones," and receiving deposits for phone service. (Id.).

During her deposition, Plaintiff stated that she did make outbound sales calls in a prior

---

[5] There are several versions of Plaintiff's resumé in the record. References herein are to the resumé that Plaintiff submitted with her summary judgment response. (Ex. 2 to Doc. 25).

job; however, her definition of "outbound calls" was calling a customer back when she was not available to take the incoming call from the customer. (Pl. Dep. at 112-13). Additionally, Plaintiff explained that her job for Wireless Retail involved selling cellular phone service at a kiosk inside a Sam's Club store, and her job at Cellular Connection similarly entailed selling cellular phone service at a kiosk inside a different retail store. (Pl. Dep. at 103-04).

Plaintiff has presented no evidence showing that she informed Staples of any outbound sales experience; on the contrary, she specifically indicated "inbound" calls on her application. Neither Plaintiff's application nor her resumé indicates outbound sales calling experience. Thus, the Court cannot conclude that Plaintiff has established a prima facie of age discrimination. Plaintiff contends that this was not a job requirement but only a "preference," and she asserts that "[c]ompanies frequently advertise in this manner to allow the interviewer the latitude to hire someone who may not have the preferred experience, if they have other experiences that are likely to make them successful at the job." (Doc. 25 at 6). However, an employer is certainly permitted to choose the most qualified candidates to interview, and nothing requires an employer to interview all qualified applicants. Additionally, Plaintiff has not identified any other experiences that she had that would allegedly compensate for lack of outbound sales experience. Plaintiff also argues that Staples "did in fact hire individuals who did not have outbound sales experience," (id.), citing the application of Mr. Jacobs (Ex. 1 to Doc. 26). However, another exhibit submitted by Plaintiff (Ex. 6 to Doc. 25) indicates that Mr. Jacobs is the same age as, or older than, Plaintiff; thus, this evidence does not support an inference of age discrimination.

Although the Court concludes that Plaintiff has not established that she met Staples's preferred objective job requirements and thus has not put forth a prima facie case, the Court will nevertheless engage in the remainder of the McDonnell Douglas analysis. Giving Plaintiff the benefit of the doubt as to satisfaction of the prima facie case, the burden shifts to Staples to articulate a legitimate, nondiscriminatory reason for its decisions not to interview Plaintiff initially and not to hire her after she was ultimately interviewed. Staples has done so by putting forth several nondiscriminatory reasons—that she lacked experience making outbound sales calls; that she was rude and displayed a poor attitude during the application process; that she had a history of changing jobs frequently; that she displayed poor communications skills during her interview; and that she did not demonstrate solid sales technique when asked to make a mock sale during the interview. Thus, Staples is entitled to summary judgment unless Plaintiff presents evidence creating a genuine issue of material fact regarding whether Staples's stated reasons were a mere pretext for discrimination. See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").

In determining whether an issue has been raised as to pretext, this Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting

Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted)).  This determination involves an "evaluat[ion of] whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  Id. (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996) (citation and internal quotation marks omitted)).

Plaintiff has not cast sufficient doubt on Staples's proffered reasons to create an issue as to pretext.  Plaintiff merely speculates as to the meaning of Latson's "longevity" comment—the entire basis for Plaintiff's initial age-bias suspicion—which Staples has explained as a comment on Plaintiff's well-documented history of changing jobs frequently prior to her application with Staples.  The Court discerns no age bias in that statement—which was made by a nondecisionmaker in any event—nor is it proper for the Court to second-guess Staples's assessment that Plaintiff lacked the outbound sales experience, attitude, strong communications skills, and sales technique that it desired.  Plaintiff describes the interview as "cold and awkward" and finds fault with the mock-sale exercise, but this Court does not sit in review of an employer's hiring techniques absent some evidence of unlawful discrimination.  It is established in this circuit that "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004).  On this record, there is not even a scintilla of evidence of age bias.  Staples is entitled to summary judgment on Plaintiff's age discrimination claim.

    2. Retaliation (Count II)

In the second count of the Complaint, Plaintiff alleges that Staples retaliated against her—by not hiring her—after she complained to Ellen Kruse about suspected age discrimination. The retaliation claim is, like the age discrimination claim, appropriately analyzed under the McDonnell Douglas framework discussed earlier.

To make a prima facie showing of retaliation under the ADEA, a plaintiff must show: (1) that she engaged in statutorily protected activity—by, for example, opposing age discrimination; (2) that she suffered an adverse employment action; and (3) a causal connection between the two events. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993). Plaintiff has met the first two elements of a prima facie case because it is undisputed that (1) she complained to Ellen Kruse about age discrimination and (2) she was not hired for the position. However, Plaintiff has not established the third prong, and thus, she has not put forth a prima facie case of retaliation.

Sometimes an extremely short span of time—such as the week or two involved here—between protected activity and adverse employment action may be sufficient to establish a causal connection for purposes of a prima facie case. However, even when raising an inference of causation using temporal proximity, a plaintiff must show that the person who made the employment decision was aware of the protected activity at the time the employment decision was made; it is not enough to show merely that someone who worked for a corporate employer was aware of the activity. See Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee

engaged in protected conduct.").

Declarations from each of the three decisionmakers in this case—Deborah Leider, Brian Valley, and Shawn McCurdy—have been submitted by Staples, and therein each declarant denies having knowledge of Plaintiff's complaint of age discrimination at the time the decision was made not to hire her. (See Leider Decl. ¶ 28; Valley Decl. ¶ 12; McCurdy Decl. ¶ 12). In her response, Plaintiff focuses solely on Brian Valley—about whom she claims to have specifically complained to Kruse—but she has not come forth with any evidence to refute Valley's lack of knowledge. (See Pl. Aff. at 3 ("Interestingly enough they have claimed that Mr. Valley was not aware of my prior complaint. I find that claim to be suspect because I didn't get the interview until after I made the complaint.")). The fact that Plaintiff was not given the interview until after she complained, however, does not suggest that Valley was aware of Plaintiff's complaint to Cruse. The law in this circuit is clear that where there is unrefuted evidence of lack of knowledge by a decisionmaker, the causal connection element is not satisfied. See Brungart, 231 F.3d at 799-800; accord Thampi v. Manatee County Bd. of Comm'rs, No. 09-16139, 2010 WL 2600638, at *5-6 (11th Cir. June 30, 2010). Plaintiff has not refuted the evidence submitted by Staples on this point, and Plaintiff's retaliation claim thus fails at the prima facie stage.

Additionally, as discussed in connection with Count I, Staples has met its burden of articulating legitimate nondiscriminatory reasons for not hiring Plaintiff, and Plaintiff has not cast doubt on those reasons. Plaintiff also asserts that Staples forced her "to go through a fake job interview" and that it made no sense for Staples to grant her an interview after initially rejecting her. However, Staples's grant of an interview is indeed explained by

Plaintiff's call to Kruse and Kruse's action in contacting—as a courtesy or otherwise—the appropriate regional director, who then directed that Plaintiff be interviewed. Plaintiff's assertion that the granting of the interview was "merely to mollify" her and "dissuade her from pursuing a legitimate discrimination claim" (Doc. 25 at 8) is not well-taken. As evidenced by the filing of this suit by Plaintiff, Staples had nothing to gain by rejecting Plaintiff twice rather than only once. There is simply no evidence of age-based animus in this case. Thus, Plaintiff's retaliation claim would fail even if it proceeded beyond the prima facie case.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 23) is **GRANTED** as to both counts of the Complaint.

2. All other pending motions are **DENIED as moot**.

3. The Clerk is directed to enter a judgment providing that Plaintiff shall take nothing from Defendant in this action. Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 11th day of August, 2010.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record